# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH CAROLINA

### BEAUFORT DIVISION

| | |
|---|---|
| Bradley Pennington, | ) CIVIL ACTION NO. 9:15-3354-MGL-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Cherokee County (Detention Center), | ) |
| Southern Health Partners, Inc. and | ) |
| Jamor Logan, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This action was originally filed in the South Carolina Court of Common Pleas, Eighth Judicial Circuit, and was thereafter removed to this Court on August 22, 2015 on the grounds that Plaintiff has asserted federal claims for relief in his Complaint. Following removal, Plaintiff filed an Amended Complaint on February 23, 2016.

Following the conclusion of discovery, the Defendants Cherokee County and Jamor Logan filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. Plaintiff filed a response to these Defendants' motion for summary judgment on June 13, 2017, following which Defendants filed a reply memorandum on June 28, 2017. These Defendants' motion is now before the Court for disposition.[1]

_____

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local (continued...)



## Background and Evidence

Plaintiff alleges in his Amended Complaint[2] that on or about July 24, 2014 he was arrested on a trespass charge and was thereafter placed in the Cherokee County Detention Center by law enforcement officers, including the Defendant Logan, because he had an outstanding warrant related to child support. Plaintiff alleges that he was initially placed in an unsanitary and cold room with wet clothes, and was later placed fully restrained in a chair with foot and hand cuffs in addition to other restraints for approximately eight hours. Plaintiff alleges that the handcuffs were so tight, on his left arm especially, that they cut into his skin.

Plaintiff further alleges that following his release from restraints, the Defendants' "agents" pulled on his left arm to take a print, at which time Plaintiff "pulled away abruptly and yelled and/or screamed" because of the pain in his left wrist. Plaintiff alleges that he was then knocked to the ground, kneed and kicked, and that a taser was used on him "numerous times", even though (when allowed) he explained that his wrist was painful to the touch. Plaintiff alleges that he

---

[1](...continued)
Rule 73.02(B)(2)(d) and (e), D.S.C. Two of the Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints are to be considered as affidavits with respect to the factual allegations asserted and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, the Complaint in this case is an *unverified* Complaint. Therefore, although the allegations of the Amended Complaint are set forth hereinabove, the undersigned has not considered the factual allegations set forth in the unverified Complaint as evidence in issuing a recommendation in this case. Moran v. Selig, 447 F.3d 748, 759 at N. 16 (9th Cir. 2006) [Noting an unverified complaint cannot be evidence on a motion for summary judgment]; cf. Patterson v. Triangle Tool Corp., No. 14-1557, 2016 WL 3519617 at * 5 n. 8 (E.D.Wis. June 22, 2016) ["A]n unadmitted allegation in an unverified complaint is of course not evidence that may be used to oppose summary judgment".].



was then placed with the general population, and that by early the following week (July 28th and 29th) the pain had become "extreme", with swelling and fluids draining from the wrist area. Plaintiff alleges that a nurse saw him during this time period, but took no action related to his wrist.

Plaintiff alleges that he was not provided with a form to request to be seen by the nurse even though he repeatedly asked for one, so other inmates had to assist him in getting a form. Plaintiff alleges that he was thereafter eventually seen by a nurse for his wrist complaint after approximately four or five more days had elapsed, at which time he was prescribed some pain medication and an antibiotic, which was to be taken orally twice a day. Plaintiff alleges that although this treatment continued for approximately three days, he also asked to be seen by a physician, but was never allowed to see one. Plaintiff alleges that he was ultimately released from the Detention Center on or about August 4, 2014, at which time his parents took him to the hospital, where he was diagnosed with an advanced infection/MRSA.

Plaintiff asserts three state law causes of action in his Complaint. In his **First Cause of Action** he asserts a claim for negligence/assault and battery against all of the Defendants, in his **Second Cause of Action** he asserts a claim for assault and battery against the "County defendants", and in his **Fourth Cause of Action** (mislabeled "Third Cause of Action") Plaintiff asserts a claim for medical negligence against the Defendant Southern Health Partners, Inc. Plaintiff also asserts a federal claim in his **Third Cause of Action** against the Defendant Jamore Logan for violating his constitutional rights by "intentionally subjecting the Plaintiff to abuse, assault, battery, restraint, and violation of his civil rights . . . .". Amended Complaint, ¶ 24. Although not named in the heading for this cause of action, Plaintiff also apparently has intended to assert a federal constitutional claim against the Defendant Cherokee County for failing to "properly supervise law enforcement officers



they employ and [by its] failure to properly implement and enforce procedures to prevent such conduct by their law enforcement officers . . . .". Id. Plaintiff seeks monetary damages. See generally, Plaintiff's Amended Complaint.

In support of their motion for summary judgment, the Defendants Cherokee County and Logan have submitted an affidavit from Stephen Anderson, who attests that he is the Director of the Cherokee County Detention Center. Anderson attests that the Sheriff of Cherokee County controls all of the day to day operations and personnel that staff the Detention Center, that the Detention Center officers are deputies who serve at the leisure of the Sheriff, and that the Detention Center is run by the Sheriff and not by the County. Anderson further attests that Southern Health Partners is a contract medical provider providing medical services to inmates at the Detention Center, and that their employees are not employees or agents of the Sheriff of Cherokee County. Anderson has also submitted as attachments to his affidavit numerous documents relating to Plaintiff's period of incarceration at the Detention Center from July 24, 2014 to August 4, 2014, including Incident Reports and documents related to the medical care Plaintiff received at the Detention Center. See generally, Anderson Affidavit, with attached exhibits. The Defendants have also submitted excerpts from Plaintiff's deposition, as well as excerpts from the deposition of Cathy Locke, a licensed practical nurse.

In opposition to the Defendants' motion, Plaintiff has provided an affidavit wherein he attests that he was arrested for breech of the peace on July 24, 2014, at which time Plaintiff attests he was drunk but did not resist. Plaintiff attests that when he was arrested he was in shorts with tennis shoes and no shirt, and that when he was put in a cell at the Detention Center he was wet and the room was cold. Plaintiff also attests that the cell was "a mess - very nasty", and that even though



he asked for some toilet paper, none was provided.  Plaintiff admits that he banged on the window and the door of his cell because (Plaintiff says) no one would provide him with any toilet paper or "a blanket or something".  Plaintiff attests that after he continued banging on the door and yelling, a "black officer"[3] came to the cell and threw him to the ground, putting his knee in his back.  Plaintiff also attests that he was tased, following which he was put into a restraint chair.  Plaintiff attests that his feet and arms were cuffed, with the left wrist cuff being "real tight".  Plaintiff attests that he complained about it being too tight and hurting his arm, but that neither the "black officer" nor anyone else did anything.  Plaintiff attests that he was in the chair for "a long time", and that "maybe I was too loud because [the correctional officers] were real mad on that day afterwards".  Plaintiff attests that he was eventually released from the restraint chair by a "female officer", who told him he had been in the chair for eight hours.

However, notwithstanding the statements just recounted, Plaintiff also essentially states in his affidavit that he cannot really remember exactly what happened during the time period following his arrest, including during his time in the restraint chair.  He does attest that after he was released from the restraint chair his body was real stiff and his back hurt.  He also states that his left wrist hurt as well as his eyes, and that during his time in the restraint chair blisters he already had on his feet busted, so his feet also hurt "real bad".  Plaintiff then attests that he "must have written a sick call slip", although again he really does not remember, but he did see a nurse the next day.  Plaintiff attests that the "most painful thing was my feet", and that the nurse put something on them.  Plaintiff attests that he remembers telling the nurse about the taser and showing her his left wrist, which "was red and cut a little on each side from the cuffs", and that the nurse put something on his

---

[3]Apparently the Defendant Logan.

5



wrists "like a small wrap".

Plaintiff attests that "after a while" his left wrist began hurting worse, although it was not until Sunday (which would have been July 27) that he asked the weekend nurse to look at it. Plaintiff attests that the nurse told him he needed a sick call first, so he started asking the guards for a sick call slip. Plaintiff attests that an officer "Scruggs" told him "they would bring one back", but that no one came back with one. Plaintiff attests that he also talked to his mom on either Sunday or Monday, during which he told her that his wrist was hurting "pretty bad", and that his parents told him they would come to visit him on visitation day, which was Tuesday. Plaintiff attests that after his parents' visit, he continued to ask for a sick call slip, but that no guard would get him one. Plaintiff attests that by this time his wrist and hand were swollen, and that sometimes pus would drain from the cuts in his wrist. Plaintiff alleges that he took showers "all the time" to keep it clean, and that he also obtained an ace type bandage from another inmate that he used to wrap it.

Plaintiff attests that on Thursday he was able to obtain a sick call form from another inmate (Inmate Cobb), and that later that evening (after he showed his wrist to a guard) the guard got him some ice and some pain killer pills (apparently Tylenol) which helped with this pain. Plaintiff attests that the following day he was taken to medical, where he was seen by the weekday nurse. After showing his wrist to the nurse, Plaintiff attests that she prescribed him some antibiotics and pain medicine, which he received that evening. Even so, Plaintiff attests that his hand and wrist continued to get worse each day, but after seeing a nurse again on Friday, he does "not remember" seeing a nurse for the next two days, although he did get medicine each day. Plaintiff attests that by the following Monday, his wrist was "still real bad", and he saw a nurse and (he believes) got a TB shot. Plaintiff attests that he was subsequently bonded out and his mom took him to the hospital that



6

evening.  <u>See generally</u>, <u>Plaintiff's Affidavit</u>.

Plaintiff has also submitted an affidavit from his mother, Dolores Pennington, who attests that when she and her husband visited the Plaintiff on Tuesday July 29, he showed them his wrist and that she recalls that it "did look bad to me".  Dolores Pennington attests that Plaintiff told her that he had been trying to see the nurse but that the guards would not bring him a form.  Dolores Pennington further attests that after talking with her son on Thursday July 31, by phone, she called the jail and spoke with an officer about her son needing medical attention, and was told that Plaintiff needed to fill out a form.  Dolores Pennington attests that when she told the officer that Plaintiff had not been able to get a form, the officer said that all he had to do was ask.  Dolores Pennington attests that following Plaintiff's release, they went directly to the emergency room, and that Plaintiff was admitted to the hospital and stayed there several days.  <u>See generally</u>, <u>Dolores Pennington Affidavit</u>.

Plaintiff has also submitted an affidavit from Tracy Cobb, a fellow inmate who attests that he first met the Plaintiff at the Cherokee County Detention Center in July 2014.  Cobb attests that he noticed that Plaintiff had a problem with his hand/arm within the first couple of days of his arrival, that he told Plaintiff he needed to get the infection out of his arm, and that even though he and several other inmates pressed the emergency button and asked guards to come look at Plaintiff's arm, no one ever came, with the guards telling them to stay off the emergency button or they would be taken to lockup.  Cobb further attests that he heard Plaintiff ask for a sick call sheet, and that after he did not receive one, he (Cobb) gave Plaintiff one the next day.  Cobb attests that he had to help Plaintiff fill out the sheet because his hand was "so swollen", and that Plaintiff was finally seen by the nurse the night after he filled out the sick call sheet.  <u>See generally</u>, <u>Cobb Affidavit</u>.

Plaintiff has also provided an affidavit from James Hawley, who attests that he is a



nurse licensed to practice nursing in the State of Tennessee. Hawley attests that he was asked to review medical records and other evidence in this matter, and was deposed in April 2017. Hawley attests that in his opinion the nursing staff (Southern Health Partners) failed to follow the proper standard of care when they did not send Plaintiff to an emergency room or other facility which could IV antibiotics and/or take surgical steps for his wound. Hawley further attests that if the nurses on staff at the time were not trained to evaluate such an infection, they breached the standard of care by not seeking a higher medical evaluation. Hawley attests that, as a result, the injuries to Plaintiff's wrist and hand were more likely than not significantly worse than would have been the case if they had not breached the standard of care. Hawley attests that, based on the evidence he has reviewed, including affidavits, photos and records, as well as his knowledge of infections and the progression of infection, that Plaintiff's infection was first noticeable at least on or about Sunday, July 27, if not a day or two earlier, that Plaintiff did not receive nursing assistance until Friday, August 1, and that in his opinion had Plaintiff been given treatment with oral Bactrim early, when the infection first became noticeable, this treatment protocol would more likely than not have abated the infection leading to no serious injury. See generally, Hawley Affidavit.

Plaintiff has also provided excerpts from several depositions, and copies of incident reports and various medical notes and documents as exhibits.

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the



pleadings is appropriate. <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992).

       Here, after careful review and consideration of the arguments and evidence submitted, the undersigned finds for the reasons set forth hereinbelow that the Defendants Cherokee County and Jamar Logan are entitled to summary judgment in this case.

## I.

       Initially, the Defendant Cherokee County is correct that it is entitled to summary judgment and dismissal as a party Defendant in this case since there is no evidence whatsoever that Cherokee County employed the Defendant Logan (or any other correctional officer), the Defendant Southern Health Partners, Inc., or was in any way responsible for the care and treatment of prisoners at the Cherokee County Detention Center. Rather, the evidence shows, and this Court may also take judicial notice from numerous other cases filed in this Court relating to claims against County Detention Centers, that the Cherokee County Detention Center is operated by, and under the control of, the Sheriff of Cherokee County, not the County of Cherokee. <u>See</u> <u>Cobb v. State of South Carolina</u>, No. 13-2370, 2014 WL 4220423 at * 2 (D.S.C. Aug. 25, 2014) [discussing Fourth Circuit and South Carolina law holding that since County has no control over operations or policies of the jail, it cannot be held liable for events that take place there].

       It is well established in South Carolina that a sheriff's office is an agency of the state, not a county or local government. <u>Stewart v. Beaufort County, et al.</u>, 481 F.Supp.2d 483, 492 (D.S.C. 2007); <u>Cone v. Nettles</u>, 417 S.E.2d 523, 524 (S.C. 1992) [Under South Carolina law, the



Sheriff and Sheriff's deputies are State, not County, employees]; see also Heath v. Aiken County, 368 S.E.2d 904, 905 (S.C. 1988) [same]; S.C.CodeAnn. § 4-9-650, as amended [providing that the County administrator shall exercise no authority over any elected officials of the county whose offices were created either by the Constitution or by the general law of the State]. Moreover, deputies (such as the Defendant Logan) serve at the leisure of the sheriff, and it is the sheriff who is responsible for the acts and omissions of deputies, not the County. See S.C.Code Ann. § 23-13-10, as amended [providing that the Sheriff shall in all cases be answerable for a neglect of duty or misconduct in office of any deputy]; see also S.C. Const. Art. V, ¶ 24 [providing for the creation of the office of Sheriff]. Therefore, to the extent Plaintiff has any viable claims arising out of his stay in the Cherokee County Detention Center, it would be the Cherokee County Sheriff's Office, not Cherokee County, that would be potentially liable. Cf. Allen v. Fidelity and Deposit Co., 515 F.Supp. 1185, 1189-1191 (D.S.C. 1981)["To allow the County to be held accountable for the actions of the sheriff and his deputies over whom it has no control as to the manner in which they perform their official duties and whom it cannot hire, fire, discipline or train relative to the performance of the duties of their offices, would be to subject the County to unbridled and unlimited liability over which it has no control and over which it is prevented from exercising such control"], affd, 694 F.2d 716 (4th Cir. 1982) [Table].

Additionally, the undersigned is constrained to note that although the Defendant Cherokee County specifically raised this defense to liability in its motion for summary judgment, Plaintiff failed to even address this issue in his memorandum opposing summary judgment. As such, Plaintiff has failed to present a genuine issue of fact as to whether Cherokee County bares any potential liability for his claims sufficient to defeat this Defendant's motion for summary judgment.



Cf. Riley v. County of Cook, 682 F.Supp. 2d 856, 860 (N.D.Il. 2010)["Because the sheriff is an independently-elected official, he answers directly to the electorate and does not have a master/servant relationship with the county [ ]. Since the County cannot control the actions taken by [the Sheriff's] Office, it cannot be charged with vicarious liability"] (internal citations omitted).

The Defendant Cherokee County is therefore entitled to summary judgment and dismissal as a party Defendant in this case.[4]

---

[4]In the event Plaintiff moves to substitute the Sheriff of Cherokee County as the party Defendant in this case at this time, replacing Cherokee County as the Defendant, any such motion should be denied. Since the Sheriff's Department is an agency of the State, a suit against the Sheriff's Department would be a suit against the State of South Carolina itself. Miller v. Colleton County Sheriff's Office, No. 15-1253, 2015 WL 2172681 at * 1 (D.S.C. May 7, 2015) ["In South Carolina, it is well-established that a sheriff's office is an agency of the state, such that a suit against the sheriff's office is a suit against the state".]; Gulledge v. Smart, 691 F.Supp. 947 (D.S.C. 1988), aff'd. 878 F.2d 379 (1989); Carroll v. Greenville County Sheriff's Dept., 871 F.Supp. 844, 845-846 (D.S.C. 1994). As such, the Sheriff's Office would be immune from suit in this Court for any of the federal civil rights claims asserted by Plaintiff in his Third Cause of Action, as it is well settled that the Eleventh Amendment to the United States Constitution divests this Court of jurisdiction to entertain a Section 1983 damages suit brought against the State of South Carolina or its agencies. Coffin v. S.C. Dep't of Soc. Servs., 562 F. Supp. 579, 583 (D.S.C. 1983); Gulledge v. Smart, 691 F.Supp. at 954-955 [Sheriff's office entitled to Eleventh Amendment immunity from suit]; Cash v. Thomas, No. 12-1278, 2013 WL 3804375, at * 7 (D.S.C. July 19, 2013)["It is well settled, both in South Carolina and federal law, that a Sheriff in South Carolina is an arm of the State and not a County employee and therefore is entitled to Eleventh Amendment immunity in his or her official capacity from suit in Federal Court"], citing Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996). Further, as an employee of the Sheriff, the Defendant Logan is a state employee and is therefore also immune from suit in federal court in his official capacity. Gulledge, 691 F.Supp. at 954-955 [Sheriffs and deputy sheriffs are agents of the State and cannot be sued in their official capacities]; Jamison v. Bamburg, No. 11-2245, 2012 WL 7656426, at * 3 (D.S.C. Nov. 28, 2012)["[T]he Detention Center defendants [sued in their official capacities] are entitled to sovereign immunity"], aff'd, 2013 WL 819193 (D.S.C. Mar. 5, 2013).

The Sheriff's office also enjoys Eleventh Amendment immunity from suit for the state law claims asserted in Plaintiff's First and Second Causes of Action. Although a State may consent to a suit in a federal district court, Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99 & n.9 (1984), the State of South Carolina has specifically not consented to any such actions. While the South Carolina Tort Claims Act does waive the State of South Carolina's sovereign immunity in

(continued...)



## II.

With respect to the Defendant Logan, Plaintiff's First and Second Causes of Action assert state law claims against this Defendant under the South Carolina Tort Claims Act. However, Logan is not the proper party Defendant for a claim under the South Carolina Tort Claims Act, and he is therefore entitled to dismissal as a party Defendant for these claims. It is the Cherokee County Sheriff's Department that may be liable under the SCTCA if a sheriff's deputy is found to have been "grossly negligent" in the exercise of his or her duties, not the individual officer. See S.C. Code Ann. § 15-78-60 (25)[Providing that a governmental entity may be liable when its responsibility or duty towards a prisoner is exercised in a grossly negligent manner]; S.C.Code Ann. § 15-78-70(a) and (b) [An employee of a governmental entity is immune under the SCTCA for tortuous acts committed within the scope of his official duties and not liable except for actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.]; Flateau v. Harrelson, 584 S.E.2d 413, 417

---

[4](...continued)
*state court* for certain tort claims, it specifically reserves South Carolina's Eleventh Amendment immunity from suit in Federal Court. See S.C. Code Ann. § 15-78-20(e)["Nothing in this chapter is construed as a waiver of the state's . . . immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States . . . ."]. Additionally, since the Sheriff's Department was not a party to this case when it was removed to this federal court from state court, again even assuming that Plaintiff attempted to now add the Sheriff's Department as a party Defendant in this case, the removal of this case from state court by the other Defendants did not waive the Sheriff Department's immunity from suit in this federal court (since it was not a party that consented to removal), even with respect to the tort claims for which immunity from suit has been waived in state court. See Lapides v. Board of Regents of the Univ. System of Georgia, 535 U.S. 613, 619 (2002)[Only a state's voluntary appearance in federal court waives sovereign immunity, and then only with respect to claims where the State has consented to suit in its own courts for such claims]; see also Stewart v. North Carolina, 393 F.3d 484 (4th Cir. 2005)[finding no waiver where state has not consented to suit in its own courts for such claims]; cf. Arnold v. South Carolina Department of Corrections, et al., No. 11-712, 2012 WL 684020, at * 2 (D.S.C. Jan. 3, 2012), adopted by, 2012 WL 684018 (D.S.C. Mar. 2, 2012).



(S.C.Ct.App. 2003) [Dismissing claims against individual defendants because the alleged torts were committed while acting within the scope of their official duties]; <u>Walters v. County of Charleston</u>, No. 01-59, 2002 WL 34703346 at * 8 (D.S.C. Feb. 7, 2002) [County, not individual, liable if Plaintiff shows gross negligence]; <u>see also</u> <u>Jinks v. Richland County</u>, 585 S.E. 2d 281, 283-284 (S.C. 2003).

Again, however, Plaintiff has not named the Sheriff's Department as a Defendant in this case; rather, he named Cherokee County, which was not Logan's employer and was not responsible for the operation of the Detention Center or the treatment of its inmates. <u>See</u> S.C.Code Ann. § 15-78-70(c) [setting forth that a person bringing a tort claim under the provision of the SCTCA is required to name as the party defendant only the agency or the political subdivision for which the employee was acting, and that where an employee is individually named, the agency or political subdivision for which the employee was acting "must" be substituted as the party defendant]; <u>Flateau</u>, 584 S.E.2d at 418.[5] Therefore, Logan is entitled to summary judgment and dismissal as a party Defendant from Plaintiff's First and Second Causes of Action asserted under the South Carolina Tort Claims Act.

### III.

Plaintiff's only remaining claim against either of these two Defendants is his claim in his Third Cause of Action wherein Plaintiff asserts a claim against Logan individually for violating his constitutional rights. As an employee of the Sheriff's Department, the Defendant Logan

---

[5]However, as previously noted, Plaintiff cannot substitute the Sheriff's Office for the County as the party Defendant for these claims, as the Sheriff's Office enjoys Eleventh Amendment immunity from suit in this Court. <u>See</u> n. 4, <u>supra</u>.



is subject to suit for damages in his individual capacity under Section 1983.[6]  <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. at 71; <u>Hafer v. Melo</u>, 112 S.Ct. 358, 365 (1991); <u>Goodmon v. Rockefeller</u>, 947 F.2d 1186 (4th Cir. 1991); <u>Inmates v. Owens</u>, 561 F.2d 560 (4th Cir. 1977).  Plaintiff alleges that Logan violated is constitutional rights by using excessive force on him and unlawfully restraining him.

As a pretrial detainee during the time period set forth in the Complaint, Plaintiff's constitutional claim against the Defendant Logan is evaluated under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes.  <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979).  Even so, the underlying standard for determining whether Logan violated Plaintiff's constitutional rights is essentially the same.  <u>See</u> <u>Martin v. Gentile</u>, 849 F.2d 863, 870 (4th Cir. 1988) [Holding that the Fourteenth Amendment guarantees at least Eighth Amendment protections].  Plaintiff's constitutional claim against Logan is that Logan used excessive force against him.  However, Plaintiff has failed to submit sufficient evidence to this Court to establish or raise a genuine issue of fact as to whether Logan violated Plaintiff's constitutional rights.

For a pretrial detainee to establish excessive force under the Fourteenth Amendment, he need not show that the officer was subjectively aware that the use of force was excessive; rather,

---

[6]42 U.S.C. § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  <u>Albright v. Oliver</u>, 510 U.S. 266, 271 (1994) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)).  A civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  <u>City of Monterey v. Del Monte Dunes at Monterey, Ltd.</u>, 526 U.S. 687, 707 (1999).  To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).



he need only show that the force that was purposely, knowingly, or possibly recklessly used against him, was objectively unreasonable. See Kingsley v. Hendrickson, 135 S.Ct. 2466, 2472 (2015).

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. Kingsley, 135 S.Ct. at 2473. Because the standard is an objective one, the court is not concerned with the officers' motivation or intent. See, e.g., Clay v. Emmi, 797 F.3d 364, 370 (6th Cir. 2015). Moreover, it is appropriate to determine whether the force used was objectively reasonable in "full context," as a segmented view of the events "misses the forest for the trees." Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2015) (brackets and internal quotation marks omitted).

Duff v. Potter, 665 F. App'x 242, 244 (4th Cir. 2016).

Plaintiff has presented no evidence to establish liability under this criteria. While Plaintiff generally attests in his affidavit that a "black officer", who Plaintiff assumes to have been the Defendant Logan, came to his cell and threw him to the ground, during which he put his knee in Plaintiff's back, and then placed him in the restraint chair, Plaintiff also states in his affidavit that he does not really remember exactly what happened, other than the fact that he does remember that he was banging on the window and door of his cell, which is what led to the force and restraint that were used against him.

Moreover, Plaintiff testified in his deposition that although he remembered being tased, he did not have a clear recollection of what had happened subsequent to his arrest all the way through the following Sunday. Plaintiff's Deposition, p. 85. Further, when Plaintiff was asked if he knew who had tased him, he responded "no, sir". Id., p. 86. Plaintiff also testified that he did not have a clear recollection of what he had been doing immediately before he had been tased, but that



15

he was told by Sheriff's Deputies (apparently Logan and another Deputy named "Wickes") that he had been "acting up". <u>Id</u>., p. 87. Plaintiff did also testify that, prior to being tased, he had been "banging on the door" to his cell. <u>Id</u>., p. 88. Plaintiff further testified that he specifically remembered banging on the door causing a disturbance before he was tased, and that although he cannot remember whether he "lunged" at anybody when they came into his cell, he could not deny that he had done so. <u>Id</u>., pp. 89-90. Also, when Plaintiff was asked if he knew who had put him in the restraint chair, he testified "I am not sure". <u>Id</u>., p. 90. Plaintiff also testified that he did not know who had placed the cuffs on his wrists, although he believed it was Logan. Plaintiff also later testified (contradicting his earlier testimony that he could not really remember what had happened) that he remembered Logan slapping him onto the floor and putting his knee in his back, and that Logan later told him that he [Plaintiff] had "came after him". <u>Id</u>., p. 97. Again, Plaintiff could not deny that he had engaged in this conduct. <u>Id</u>., p. 99.

In addition to Plaintiff's own deposition testimony, the Defendants' exhibits reflect that on July 24, 2014 Plaintiff was placed in a restraint chair by four officers (one of whom was the Defendant Logan) after he had been warned several times to stop hitting the window and door in his cell and to stop standing and jumping off the bench in his cell. This evidence further shows that when Plaintiff's cell door was opened, Plaintiff "stormed at Ofc. Logan and Ofc. Johnson totally resisting to go into the chair". Again, Plaintiff testified that he could not deny engaging in such conduct. The Defendants' documentary evidence reflects that Officers Logan and Johnson restrained the Plaintiff, taking him to the floor "to keep him from hitting one of us". Even then, Plaintiff "still resisted, stiffened up and [was] screaming at us". Defendants' evidence then specifically indicates that it was a different jail officer, a Corporal Waters, not Logan, who then tased the Plaintiff. <u>See</u>



16

Defendants' Exhibits (Court Docket No. 51-2, pp. 6-7).

This evidence does not create a genuine issue of fact as to whether Deputy Logan used unconstitutionally excessive force on the Plaintiff. First, there is no evidence that Logan ever used a taser on the Plaintiff. In fact, the evidence is to the contrary. Moreover, the evidence is also clear that before Plaintiff was physically restrained in his cell and then placed in the restraint chair, he had been acting out causing a disturbance, refused to stop his abusive activity notwithstanding having been told to do so, and had resisted the officers when they entered his cell to attempt to restrain him. Based on these facts and the evidence, the Defendant Logan (who by all appearances was one of three or four officers who entered the cell to subdue the Plaintiff) certainly would have reasonably perceived a threat as well as a need for the application of force to get the situation under control. It is simply a truism that when jail inmates are non-compliant with legitimate instructions and prison requirements, physical force sometimes has to be applied in order to gain compliance and maintain institutional security, the security of prison employees, as well as the inmates themselves. It is only when the force used under such circumstances is constitutionally excessive that a viable § 1983 claim is presented. There is no evidence of any such force being used here.

Based on the facts and evidence, there is no genuine issue of fact as to whether the extraction team (including the Defendant Logan) was justified in going into Plaintiff's cell and using physical force to subdue him, based on Plaintiff's own conduct and his failure to comply with legitimate instructions to cease his abusive conduct. Hence, the use of force was necessary under these circumstances, and Plaintiff has provided no evidence whatsoever to show that the amount of force used in this case by Logan was excessive or for the very purpose of causing harm, as opposed to a good faith effort to maintain and restore discipline. Kingsley, 135 S.Ct. at 2473 ["Objective



reasonableness turns on the facts and circumstances of each particular case"]; <u>Jackson v. DeAngelo</u>, No. 15-3725, 2016 WL 41544688, at * 4 (D.S.C. June 29, 2016) [Finding constitutional application of force by officer to "restore order and discipline under the circumstances"], <u>adopted by</u>, 2016 WL 4123900 (D.S.C. Aug. 3, 2016).

Plaintiff's complaint about Logan participating in placing him in the restraint chair is also, by itself, insufficient to state a constitutional claim. Placement of an inmate in a restraint chair does not in and of itself constitute an excessive use of force, as the use of devices such as restraint chairs have repeatedly been found to be constitutional when used appropriately. <u>Rodriguez v. Taylor</u>, No. 08-1027, 2008 WL 5244480, at * 8 (D.S.C. Dec. 15, 2008); <u>Coleman v. McMillian</u>, No. 12-916, 2014 WL 1249290, at * 5 (D.S.C. Mar. 26, 2014). Here, the evidence before the Court confirms that Plaintiff was placed in a restraint chair shortly following an incident where he was being physically disruptive and refused to obey orders, resulting in a cell extraction team having to be deployed. Placement of recalcitrant inmates in restraint chairs as a means to maintain "order and control" is not a violation of the Constitution. <u>Cf</u>. <u>Williams v. Benjamin</u>, 77 F.3d at 756, 763-764 (4th Cir. 1996) [Finding that officers' decision to confine Plaintiff in restraints after a disturbance was a not unreasonable attempt to restore "order and control" to the situation]; <u>Coleman</u>, 2014 WL 1249290, at * 5 [Placement in restraint chair in order to prevent plaintiff from "disrupting the orderly operations of the facility as well as potentially causing injury to himself, the staff, or the facility" found to be proper].

Significantly for purposes of Plaintiff's claim, there is no evidence of any participation by Logan in any events that may have occurred after Plaintiff was initially placed in the restraint chair, that he was in any way responsible for how long Plaintiff remained in the restraint



18

chair, or was responsible for any medical injuries (if any) Plaintiff may have incurred as a result thereof. As such, again no genuine issue of fact as to whether Logan was involved in a constitutional violation against the Plaintiff has been presented in this evidence. Mackey v. Anderson County Detention Center, No. 06-1180, 2007 WL 1656231, at * 1 (D.S.C. June 5, 2007) [Finding detainee's placement in a restraint chair was not a per se constitutional violation]. Therefore, the Defendant Logan is entitled to summary judgment on Plaintiff's constitutional excessive force claim. Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ["Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"]; cf. Blakeney v. Rusk County Sheriff, 89 Fed.Appx. 897, 899 (5th Cir. 2004) [Pre-trial detainee's rights were not violated when he was placed in restraint chair for twenty hours after he disobeyed orders and engaged in unruly, destructive practices, since the purpose was not punishment] [bench trial].

**Conclusion**

Based on the foregoing, it is recommended that the Defendants Cherokee County and Jamar Logan's motion for summary judgment be **granted**, and that these Defendants be **dismissed** as party Defendants in this case. Further, as these two Defendants are the only Defendants named in Plaintiff's Second and Third Causes of Action, both of those Causes of Action should be **dismissed**, in toto.

If the Court adopts the recommendation set forth herein with respect to the Defendants Cherokee County and Logan, the only claims remaining in this lawsuit will be Plaintiff's state law claims against the Defendant Southern Health Partners, Inc. as set forth in his First and Fourth Causes of Action. When federal claims presented in a case originally filed in state court are dismissed, any remaining state law claims should be remanded back to state court for resolution under the general



doctrine developed in <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 (1966). <u>See</u> <u>In Re</u> <u>Conklin</u>, 946 F.2d 306, 324 (4th Cir. 1991); <u>Nicol v. Imagematrix, Inc.</u>, 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); <u>Mills v. Leath</u>, 709 F.Supp. 671, 675-676 (D.S.C. 1988); <u>Carnegie-Mellon v. Cohill</u>, 484 U.S. 343 (1988); <u>Taylor v. Waters</u>, 81 F.3d 429, 437 (4th Cir. 1996).     Remand of these remaining state law causes of action will allow the more appropriate court to rule on these exclusively state law issues. <u>Gibbs</u>, 383 U.S. at 726 ["Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"].  Therefore, if the Court adopts the recommendations herein for dismissal of Plaintiff's federal claims, his remaining state law causes of action against the remaining Defendant Southern Health Partners, Inc. should be remanded back to state court for disposition.  <u>See</u> <u>Clark v. Brown</u>, 861 F.2d 66, 68 (4th Cir. 1988)[Directing dismissal of state law claims on remand following dismissal of Plaintiff's federal § 1983 claim]; <u>Mills</u>, 709 F.Supp. at 675-676 [Noting that federal courts should generally decline to exercise pendant jurisdiction over remaining state law claims after dismissal of federal claims in a lawsuit]; <u>Carnegie-Mellon</u>, 484 U.S. at 350, n. 7 ["[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state law claims."].

   The parties are referred to the Notice Page attached hereto.

_____

Bristow Marchant
United States Magistrate Judge

September 14, 2017
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**


The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).