IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT  DIVISION

| | |
|---|---|
| Bradley Pennington, | ) CIVIL ACTION NO. 9:15-3354-DCC-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **SUPPLEMENTAL** |
| | ) **REPORT AND RECOMMENDATION** |
| Cherokee County (Detention Center), | ) |
| Southern Health Partners, Inc. and | ) |
| Jamor Logan, | ) |
| | ) |
| Defendants. | ) |
| | ) |

This action was originally filed in the South Carolina Court of Common Pleas, Eighth

Judicial Circuit, and was thereafter removed to this Court on August 22, 2015 on the grounds that

Plaintiff has asserted a federal claim for relief in his Complaint.  Following removal, Plaintiff filed

an Amended Complaint on February 23, 2016.

Following the conclusion of discovery, the Defendants Cherokee County and Jamor

Logan filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P.  Plaintiff filed a

response to these Defendants' motion for summary judgment on June 13, 2017, following which

Defendants filed a reply memorandum on June 28, 2017.  The undersigned thereafter issued a Report

and Recommendation on September 14, 2017 recommending that the Defendants Cherokee County

and Jamor Logan's motion for summary judgment be granted, and that these Defendants be

dismissed as party Defendants in this case.  Further, as these two Defendants are the only Defendants



named in Plaintiff's Second and Third Causes of Action, it was further recommended that both of those causes of action be dismissed, in toto. Plaintiff's remaining state law claims against the Defendant Southern Health Partners, Inc. as set forth in his First and Fourth Causes of Action were to then be remanded back to state court for disposition.

Plaintiff filed an objection to the Report and Recommendation on September 25, 2017, attaching thereto new evidentiary exhibits that had not previously been presented. Thereafter, in an Order entered October 13, 2017, the Honorable Mary G. Lewis, United States District Judge, directed further briefing on the issues of: 1) whether and to what extent the Defendant Southern Health Partners, Inc.'s agreement with Cherokee County to provide health care services to inmates at the Cherokee County Detention Center has any bearing on the Court's consideration of Cherokee County and Logan's request for relief; 2) whether Cherokee County or the Sheriff of Cherokee County is liable for any of Southern Health's alleged wrongful acts; 3) whether the claims against John and Jane Doe have or should be dismissed with or without prejudice; and 4) if Plaintiff wishes to sue the Sheriff of Cherokee County, whether this Court should sua sponte assert sovereign immunity on his behalf and deny any motion to amend by Plaintiff on that basis. Judge Lewis then remanded the case back to the undersigned.[1]

Following remand, the undersigned issued an Order granting the Defendants until Wednesday, November 15, 2017, to file a new motion for summary judgment, if they desired to do so. A new motion for summary judgment was thereafter filed by the Defendants Cherokee County and Jamor Logan on November 22, 2017. The Defendant Southern Health Partners, Inc. also filed

---

[1]Subsequent to the issuance of this Order, the case was reassigned from Judge Lewis to the Honorable Donald C. Coggins, Jr., United States District Judge.



a reply to Judge Lewis' order that same date. Plaintiff filed a response in opposition to the Defendants' renewed motion for summary judgment on December 15, 2017, following which Cherokee County and Logan filed a reply memorandum on January 10, 2018.

The Defendants' Cherokee County and Logan's renewed motion for summary judgment is now before the Court for disposition.[2]

## Background and Evidence

Plaintiff's allegations and the evidence in this case were previously set forth in the Report and Recommendation of September 14, 2017, as follows:

> Plaintiff alleges in his Amended Complaint[3] that on or about July 24, 2014 he was arrested on a trespass charge and was thereafter placed in the Cherokee County Detention Center by law enforcement officers, including the Defendant Logan, because he had an outstanding warrant related to child support. Plaintiff alleges that he was initially placed in an unsanitary and cold room with wet clothes, and was later placed fully restrained in a chair with foot and hand cuffs in addition to other restraints for approximately eight hours. Plaintiff alleges that the handcuffs were so tight, on his left arm especially, that they cut into his skin.

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. Two of the Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints are to be considered as affidavits with respect to the factual allegations asserted and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, the Complaint in this case is an *unverified* Complaint. Therefore, although the allegations of the Amended Complaint are set forth hereinabove, the undersigned has not considered the factual allegations set forth in the unverified Complaint as evidence in issuing a recommendation in this case. Moran v. Selig, 447 F.3d 748, 759 at N. 16 (9th Cir. 2006) [Noting an unverified complaint cannot be evidence on a motion for summary judgment]; cf. Patterson v. Triangle Tool Corp., No. 14-1557, 2016 WL 3519617 at * 5 n. 8 (E.D.Wis. June 22, 2016) ["A]n unadmitted allegation in an unverified complaint is of course not evidence that may be used to oppose summary judgment".].



Plaintiff further alleges that following his release from restraints, the Defendants' "agents" pulled on his left arm to take a print, at which time Plaintiff "pulled away abruptly and yelled and/or screamed" because of the pain in his left wrist. Plaintiff alleges that he was then knocked to the ground, kneed and kicked, and that a taser was used on him "numerous times", even though (when allowed) he explained that his wrist was painful to the touch. Plaintiff alleges that he was then placed with the general population, and that by early the following week (July 28th and 29th) the pain had become "extreme", with swelling and fluids draining from the wrist area. Plaintiff alleges that a nurse saw him during this time period, but took no action related to his wrist.

Plaintiff alleges that he was not provided with a form to request to be seen by the nurse even though he repeatedly asked for one, so other inmates had to assist him in getting a form. Plaintiff alleges that he was thereafter eventually seen by a nurse for his wrist complaint after approximately four or five more days had elapsed, at which time he was prescribed some pain medication and an antibiotic, which was to be taken orally twice a day. Plaintiff alleges that although this treatment continued for approximately three days, he also asked to be seen by a physician, but was never allowed to see one. Plaintiff alleges that he was ultimately released from the Detention Center on or about August 4, 2014, at which time his parents took him to the hospital, where he was diagnosed with an advanced infection/MRSA.

Plaintiff asserts three state law causes of action in his Complaint. In his **First Cause of Action** he asserts a claim for negligence/assault and battery against all of the Defendants, in his **Second Cause of Action** he asserts a claim for assault and battery against the "County defendants", and in his **Fourth Cause of Action** (mislabeled "Third Cause of Action") Plaintiff asserts a claim for medical negligence against the Defendant Southern Health Partners, Inc. Plaintiff also asserts a federal claim in his **Third Cause of Action** against the Defendant Jamore Logan for violating his constitutional rights by "intentionally subjecting the Plaintiff to abuse, assault, battery, restraint, and violation of his civil rights . . . .". Amended Complaint, ¶ 24. Although not named in the heading for this cause of action, Plaintiff also apparently has intended to assert a federal constitutional claim against the Defendant Cherokee County for failing to "properly supervise law enforcement officers they employ and [by its] failure to properly implement and enforce procedures to prevent such conduct by their law enforcement officers . . . .". Id. Plaintiff seeks monetary damages. See generally, Plaintiff's Amended Complaint.

In support of their motion for summary judgment, the Defendants Cherokee County and Logan have submitted an affidavit from Stephen Anderson, who attests that he is the Director of the Cherokee County Detention Center. Anderson attests that the Sheriff of Cherokee County controls all of the day to day



operations and personnel that staff the Detention Center, that the Detention Center officers are deputies who serve at the leisure of the Sheriff, and that the Detention Center is run by the Sheriff and not by the County. Anderson further attests that Southern Health Partners is a contract medical provider providing medical services to inmates at the Detention Center, and that their employees are not employees or agents of the Sheriff of Cherokee County. Anderson has also submitted as attachments to his affidavit numerous documents relating to Plaintiff's period of incarceration at the Detention Center from July 24, 2014 to August 4, 2014, including Incident Reports and documents related to the medical care Plaintiff received at the Detention Center. See generally, Anderson Affidavit, with attached exhibits. The Defendants have also submitted excerpts from Plaintiff's deposition, as well as excerpts from the deposition of Cathy Locke, a licensed practical nurse.

In opposition to the Defendants' motion, Plaintiff has provided an affidavit wherein he attests that he was arrested for breech of the peace on July 24, 2014, at which time Plaintiff attests he was drunk but did not resist. Plaintiff attests that when he was arrested he was in shorts with tennis shoes and no shirt, and that when he was put in a cell at the Detention Center he was wet and the room was cold. Plaintiff also attests that the cell was "a mess - very nasty", and that even though he asked for some toilet paper, none was provided. Plaintiff admits that he banged on the window and the door of his cell because (Plaintiff says) no one would provide him with any toilet paper or "a blanket or something". Plaintiff attests that after he continued banging on the door and yelling, a "black officer"[4] came to the cell and threw him to the ground, putting his knee in his back. Plaintiff also attests that he was tased, following which he was put into a restraint chair. Plaintiff attests that his feet and arms were cuffed, with the left wrist cuff being "real tight". Plaintiff attests that he complained about it being too tight and hurting his arm, but that neither the "black officer" nor anyone else did anything. Plaintiff attests that he was in the chair for "a long time", and that "maybe I was too loud because [the correctional officers] were real mad on that day afterwards". Plaintiff attests that he was eventually released from the restraint chair by a "female officer", who told him he had been in the chair for eight hours.

However, notwithstanding the statements just recounted, Plaintiff also essentially states in his affidavit that he cannot really remember exactly what happened during the time period following his arrest, including during his time in the restraint chair. He does attest that after he was released from the restraint chair his body was real stiff and his back hurt. He also states that his left wrist hurt as well as his eyes, and that during his time in the restraint chair blisters he already had on his feet busted, so his feet also hurt "real bad". Plaintiff then attests that he "must have written a sick call slip", although again he really does not remember, but he did see

---

[4]Apparently the Defendant Logan.



a nurse the next day. Plaintiff attests that the "most painful thing was my feet", and that the nurse put something on them. Plaintiff attests that he remembers telling the nurse about the taser and showing her his left wrist, which "was red and cut a little on each side from the cuffs", and that the nurse put something on his wrists "like a small wrap".

Plaintiff attests that "after a while" his left wrist began hurting worse, although it was not until Sunday (which would have been July 27) that he asked the weekend nurse to look at it. Plaintiff attests that the nurse told him he needed a sick call first, so he started asking the guards for a sick call slip. Plaintiff attests that an officer "Scruggs" told him "they would bring one back", but that no one came back with one. Plaintiff attests that he also talked to his mom on either Sunday or Monday, during which he told her that his wrist was hurting "pretty bad", and that his parents told him they would come to visit him on visitation day, which was Tuesday. Plaintiff attests that after his parents' visit, he continued to ask for a sick call slip, but that no guard would get him one. Plaintiff attests that by this time his wrist and hand were swollen, and that sometimes pus would drain from the cuts in his wrist. Plaintiff alleges that he took showers "all the time" to keep it clean, and that he also obtained an ace type bandage from another inmate that he used to wrap it.

Plaintiff attests that on Thursday he was able to obtain a sick call form from another inmate (Inmate Cobb), and that later that evening (after he showed his wrist to a guard) the guard got him some ice and some pain killer pills (apparently Tylenol) which helped with this pain. Plaintiff attests that the following day he was taken to medical, where he was seen by the weekday nurse. After showing his wrist to the nurse, Plaintiff attests that she prescribed him some antibiotics and pain medicine, which he received that evening. Even so, Plaintiff attests that his hand and wrist continued to get worse each day, but after seeing a nurse again on Friday, he does "not remember" seeing a nurse for the next two days, although he did get medicine each day. Plaintiff attests that by the following Monday, his wrist was "still real bad", and he saw a nurse and (he believes) got a TB shot. Plaintiff attests that he was subsequently bonded out and his mom took him to the hospital that evening. See generally, Plaintiff's Affidavit.

Plaintiff has also submitted an affidavit from his mother, Dolores Pennington, who attests that when she and her husband visited the Plaintiff on Tuesday July 29, he showed them his wrist and that she recalls that it "did look bad to me". Dolores Pennington attests that Plaintiff told her that he had been trying to see the nurse but that the guards would not bring him a form. Dolores Pennington further attests that after talking with her son on Thursday July 31, by phone, she called the jail and spoke with an officer about her son needing medical attention, and was told that Plaintiff needed to fill out a form. Dolores Pennington attests that when



she told the officer that Plaintiff had not been able to get a form, the officer said that all he had to do was ask. Dolores Pennington attests that following Plaintiff's release, they went directly to the emergency room, and that Plaintiff was admitted to the hospital and stayed there several days. See generally, Dolores Pennington Affidavit.

Plaintiff has also submitted an affidavit from Tracy Cobb, a fellow inmate who attests that he first met the Plaintiff at the Cherokee County Detention Center in July 2014. Cobb attests that he noticed that Plaintiff had a problem with his hand/arm within the first couple of days of his arrival, that he told Plaintiff he needed to get the infection out of his arm, and that even though he and several other inmates pressed the emergency button and asked guards to come look at Plaintiff's arm, no one ever came, with the guards telling them to stay off the emergency button or they would be taken to lockup. Cobb further attests that he heard Plaintiff ask for a sick call sheet, and that after he did not receive one, he (Cobb) gave Plaintiff one the next day. Cobb attests that he had to help Plaintiff fill out the sheet because his hand was "so swollen", and that Plaintiff was finally seen by the nurse the night after he filled out the sick call sheet. See generally, Cobb Affidavit.

Plaintiff has also provided an affidavit from James Hawley, who attests that he is a nurse licensed to practice nursing in the State of Tennessee. Hawley attests that he was asked to review medical records and other evidence in this matter, and was deposed in April 2017. Hawley attests that in his opinion the nursing staff (Southern Health Partners) failed to follow the proper standard of care when they did not send Plaintiff to an emergency room or other facility which could IV antibiotics and/or take surgical steps for his wound. Hawley further attests that if the nurses on staff at the time were not trained to evaluate such an infection, they breached the standard of care by not seeking a higher medical evaluation. Hawley attests that, as a result, the injuries to Plaintiff's wrist and hand were more likely than not significantly worse than would have been the case if they had not breached the standard of care. Hawley attests that, based on the evidence he has reviewed, including affidavits, photos and records, as well as his knowledge of infections and the progression of infection, that Plaintiff's infection was first noticeable at least on or about Sunday, July 27, if not a day or two earlier, that Plaintiff did not receive nursing assistance until Friday, August 1, and that in his opinion had Plaintiff been given treatment with oral Bactrim early, when the infection first became noticeable, this treatment protocol would more likely than not have abated the infection leading to no serious injury. See generally, Hawley Affidavit.

Plaintiff has also provided excerpts from several depositions, and copies of incident reports and various medical notes and documents as exhibits.

See Report and Recommendation (Court Docket No. 58), pp. 2-8.



7

In addition to the exhibits the Defendants Cherokee County and Logan submitted in support of their initial motion for summary judgment, these Defendants have also submitted as an exhibit to their renewed motion for summary judgment a copy of Plaintiff's affidavit of May 26, 2017 (also previously submitted by the Plaintiff as an exhibit to his initial response in opposition to summary judgment). In addition, as an attachment to their reply, these Defendants have submitted another affidavit from Major Anderson, who again attests that he is a Deputy Sheriff serving at the leisure of the Sheriff, and is the Director of the Cherokee County Detention Center. Anderson further attests that all officers who staff the Detention Center are employees of the Sheriff of Cherokee County. See generally, Anderson Affidavit.

As previously noted, as attachments to his objection to the original Report and Recommendation, Plaintiff submitted two exhibits that had not previously been submitted. Plaintiff's first exhibit is a Health Services Agreement between the Defendant Southern Health Partners, Inc. and Cherokee County dated July 7, 2012. Through this Agreement, the County contracted with Southern Health Partners to provide health care to inmates at the Cherokee Detention Center, with Southern Health Partners assuming all responsibility for the medical care of the inmates at the jail. The Agreement provides that it is to commence August 1, 2012, is to continue through July 31, 2013, and is to be automatically extended for additional one year terms thereafter subject to funding availability. As part of this Agreement, the parties acknowledged that Southern Health Partners was an independent contractor engaged to provide medical care to inmates at the jail under the direction of Southern Health Partners' management, and that nothing in the Agreement was intended or was to be construed to create an agency relationship, an employer/employee relationship, or a joint venture relationship between the parties. See generally, Exhibit (Heath Services



Agreement). Plaintiff's second exhibit is a copy of a property document showing that the property where the Detention Center is located is owned by the County.

In his response to the Defendants' motion for summary judgment, Plaintiff has resubmitted all of his original exhibits from his response to the initial motion for summary judgment, along with some additional exhibits, to wit: a copy of a letter from the Cherokee County Administrator dated May 16, 2016 discussing various budget items (Appendix 23), a copy of the Cherokee County Detention Center Inmate Orientation Handbook (Appendix 24), a copy of a letter from Southern Health Partners to the Detention Center administrator dated July 7, 2014 (Appendix 26), a copy of a document titled "Minimum Standards for Local Detention Facilities in South Carolina" (Appendix 27), and a copy of a document titled "Minimum Standards for Local Detention Facilities in South Carolina" (Appendix 29).

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

Here, after careful review and consideration of the arguments and evidence submitted, the undersigned again finds for the reasons previously set forth in the Report and Recommendation



of September 14, 2107 and as additionally discussed hereinbelow, that the Plaintiff's sole federal claim should be dismissed and that Plaintiff's surviving state law claims should be remanded to state court for disposition.

## I.

As noted, only one of Plaintiff's four Causes of Action asserts a federal claim (which was the basis for the removal of this case to Federal Court). In his Third Cause of Action, Plaintiff asserts a claim against the Defendant Logan[5] for violating his constitutional rights by "intentionally subjecting the Plaintiff to abuse, assault, battery, restraint, and violation of his civil rights . . . .". Amended Complaint, ¶ 24. As a Detention Center Correctional Officer, the Defendant Logan is subject to suit for damages in his individual capacity under 42 U.S.C. § 1983 if he violated any of

---

[5]Logan is the only individual Defendant named in this Cause of Action. Plaintiff's original Complaint did not name any particular individual, instead labeling potential individual Defendants as "Jane and John Does". See Court Docket No. 1-1, pp. 2-3. Similarly, Plaintiff's original Complaint asserted the claims in his Third Cause of Action against "John and Jane Does Correctional Officer of County Detention Center". See Court Docket No. 1-1, p. 7. Following the removal of this case to Federal Court, Plaintiff requested additional time to identify the John and Jane Doe Defendants against whom his federal claw claims were being asserted, and by Order filed January 26, 2016 he was granted until February 23, 2016 to do so. See Order Court Docket No. 13. Plaintiff thereafter filed a motion with the Court stating that he had been able to identify the Defendant Logan as being the officer involved with his claims, and seeking to add Logan as the named party Defendant in place of John and Jane Doe. Plaintiff's motion to amend his Complaint accordingly was granted, Logan was added as the named individual party Defendant in this case, and Plaintiff's amended Complaint no longer includes as a named Defendant any John or Jane Does in the caption. See Court Docket No. 20, p.1. See also Court Docket Nos. 15, 18. No further amendments, and no further attempts to add any additional parties, have ever been made or filed with the Court. Therefore, with respect to the question posed by Judge Lewis in her Order of October 13, 2017 as to whether the claims against John and Jane Doe have or should be dismissed with or without prejudice, the answer is that those claims were not dismissed at all. Rather, on motion of the Plaintiff, the Defendant Logan was substituted as the named party Defendant for Jane and John Doe once the Plaintiff had established his identity.



10

Plaintiff's constitutional rights.[6]  Will v. Michigan Dep't of State Police, 491 U.S. at 71; Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186 (4th Cir. 1991); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977).  Further, as was noted in the original Report and Recommendation, although not named in the heading for this Cause of Action, Plaintiff also apparently intended to assert a federal constitutional claim against the Defendant Cherokee County for failing to "properly supervise law enforcement officers [it] employ[s] and [by its] failure to properly implement and enforce procedures to prevent such conduct by [its] law enforcement officers . . . .".  Amended Complaint, ¶ 24.

With respect to Defendant Logan, Plaintiff alleges that Logan violated is constitutional rights by using excessive force on him and unlawfully restraining him.  However, as was extensively set out and discussed in the Report and Recommendation of September 14, 2017, Plaintiff has failed to present evidence sufficient to establish a constitutional claim against the Defendant Logan.  Plaintiff himself testified that he did not remember what led to the force and restraint that was used against him, that he did not know who had tazed him, that he was "not sure" who had placed him in the restraint chair, and that he could not even deny that he engaged in the violent and abusive conduct that led to force being used against him.  See Plaintiff's Deposition, pp. 85-90, 97, 99.[7]  See also, generally, discussion in Report and Recommendation (Court Docket No.

---

[6]42 U.S.C. § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  A civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999).

[7]In his affidavit provided as an exhibit with his opposition to the Defendants' motion for summary judgment, Plaintiff somewhat revises his deposition testimony to put a little more "meat
(continued...)



58), pp. 17-18. There is also no evidence that shows any participation by Logan in any events that may have occurred after Plaintiff was initially placed in the restraint chair, that he was in any way responsible for how long Plaintiff remained in the restraint chair, or was responsible for any medical injuries (if any) Plaintiff may have incurred as a result thereof.[8]  Conversely, the Defendants have submitted evidence to show that Plaintiff was placed in a restraint chair by four officers (one of whom was the Defendant Logan) after he had been warned several times to stop hitting the window and door in his cell and to stop standing and jumping off the bench in his cell, and after Plaintiff had attacked Logan and another officer (Officer Johnson) when they opened his cell door.[9]  The Defendants have further submitted evidence to show that it was a different jail officer, a Corporal Waters, not Logan, who tazed the Plaintiff.  As is more extensively set forth in the previous Report

---

[7](...continued)
on the bones" for his claim.  However, Plaintiff cannot establish a genuine issue of fact by offering contradictory testimony about the events at issue.  Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) ["A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the Plaintiff's testimony is correct."]; cf. Rohrbough v. Wyeth Laboratories, Inc., 916 F.2d 970 (4th Cir. 1990) ["if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact"] (quoting Barwick, 736 F.2d at 960); Darnell v. Target Stores, 16 F.3d 174 (7th Cir. 1994).

[8]Moreover, to the extent Plaintiff is asserting medical claims in his Complaint, any such claims are not part of his federal cause of action.  Plaintiff's federal claim is asserted solely against Logan (and, apparently, also against the Defendant Cherokee County; see discussion, infra and supra) as a correctional officer for alleged abuse, assault, battery, and restraint, in violation of his civil rights (and with respect to the Defendant County, a failure to "properly supervise law enforcement officers [it] employ[s] and its failure to properly implement and enforce procedures to prevent such conduct by [its] law enforcement officers . . . .").  Amended Complaint, ¶ 24.  There is no claim asserted by the Plaintiff in this Cause of Action against Southern Health Partners (whose employees provided the medical care for inmates at the Detention Center) or otherwise relating to Plaintiff's medical care.  See generally, Amended Complaint, ¶ ¶ 23-28.

[9]Again, Plaintiff testified that he cannot deny engaging in this conduct.



12

and Recommendation, there is no evidence of an unconstitutional use of force by Logan in the evidence provided; see generally, Report and Recommendation (Court Docket No. 58), pp. 13-19; and Plaintiff has presented no new evidence in response to the renewed motion for summary judgment that addresses any of these findings from the previous Report and Recommendation.

While Plaintiff complains in his response brief about the conditions and circumstances under which he was kept at the jail and makes several claims relating to being taken out of his cell, tazed, placed in a restraint chair, and about injuries he reportedly received (although he also admits he has no clear recollection of what exactly happened at any particular time), he has failed to present any *evidence* that the Defendant Logan violated any of his constitutional rights. Horton v. Marovich, 925 F.Supp. 540 (N.D.Ill. 1996) ["Thus, a plaintiff suing a government official in his individual capacity and therefore seeking to hold the official personally liable must show that the official personally caused or played a role in causing the deprivation of a federal right"]; see also House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]. Plaintiff cannot simply allege in a general and conclusory fashion that his constitutional rights were violated and then name a correctional officer who was present at the jail during the relevant time as a Defendant, but provide no probative evidence that that individual in fact violated any of his constitutional rights, and expect to survive summary judgment. Cf. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ["Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."]; Baber, 977 F.2d at 574-875 [Once the moving party submits evidence showing entitlement to summary judgment, to avoid summary judgment the party opposing the motion must respond with



specific facts showing there is a genuine issue for trial]. Therefore, Logan is entitled to summary judgment on this claim.

With respect to the Defendant Cherokee County, even assuming that Plaintiff intended to include the Defendant Cherokee County as a party Defendant in this Cause of Action, in addition to Plaintiff having failing to present evidence sufficient to establish a genuine issue of fact as to whether his constitutional rights were violated, as was noted in the previous Report and Recommendation the Defendant Cherokee County cannot be held liable for any actions committed by Logan or any other correctional officer at the Detention Center. See Report and Recommendation (Court Docket No. 58), pp. 9-11. The Cherokee County Detention Center is operated by, and under the control of, the Sheriff of Cherokee County, not the County of Cherokee. Therefore, it is the Cherokee County Sheriff, not Cherokee County (a totally separate legal entity), that would be responsible for any constitutional violations occurring at the jail. See Cobb v. State of South Carolina, No. 13-2370, 2014 WL 4220423 at * 2 (D.S.C. Aug. 25, 2014) [discussing Fourth Circuit and South Carolina law holding that since a County has no control over operations or policies of the jail, it cannot be held liable for events that take place there].

None of the new exhibits provided by the Plaintiff showing that Cherokee County may own the property where the Detention Center is located or provides the budget for the operation of the Detention Center (as it does for the Sheriff's office itself), changes the well established law in this Circuit that Counties are not responsible for any claims arising out of the operation of Detention Centers by County Sheriff's or the activities or conduct of employees (like Logan) of Detention Centers who are employed by, and serve at the pleasure of, the Sheriff. Cf. Allen v. Fidelity and Deposit Co., 515 F.Supp. 1185, 1189-1191 (D.S.C. 1981)["To allow the County to be



held accountable for the actions of the sheriff and his deputies over whom it has no control as to the manner in which they perform their official duties and whom it cannot hire, fire, discipline or train relative to the performance of the duties of their offices, would be to subject the County to unbridled and unlimited liability over which it has no control and over which it is prevented from exercising such control"], affd, 694 F.2d 716 (4th Cir. 1982) [Table]; Riley v. County of Cook, 682 F.Supp. 2d 856, 860 (N.D.Il. 2010)["Because the sheriff is an independently-elected official, he answers directly to the electorate and does not have a master/servant relationship with the county [ ]. Since the County cannot control the actions taken by [the Sheriff's] Office, it cannot be charged with vicarious liability"] (internal citations omitted).[10]

Finally, one of the questions Judge Lewis directed for further briefing on remand was whether, if Plaintiff wished to instead sue the Sheriff of Cherokee County, whether this Court should

---

[10]Plaintiff argues in his response brief that the evidence and the record creates a fact question as to whether the Detention Center was a "joint enterprise" between the County and the Sheriff and whether the County should be estopped from denying that employees of the Detention Center were agents of the County. See Response Brief, p. 17. However, this argument is not only in direct conflict with the well established precedent in this Circuit; see Allen, 515 F.Supp. at 1189-1191; see also Johnson v. Newberry County Detention Center, et al., No. 09-47, 2010 WL 737843, at * 11 (D.S.C. Feb. 26, 2010); Clark v. Sumpter County, et al., No. 07-791, 2008 WL 3540480, at * 13 (D.S.C. Feb. 7, 2008) [Noting that "the Fourth Circuit [has] held that a county is not subject to liability under 42 U.S.C. § 1983 where the sheriff is charged with running the jail and the county has no control over policy within the jail"]; it must also be noted that Plaintiff's argument that Cherokee County should be held liable in this case relates almost solely to the issue of Plaintiff's medical care, and the fact that the Defendant Cherokee County had contracted with the Defendant Southern Health Partners to provide medical care at the Detention Center. See generally, Plaintiff's Response Brief, pp. 11-17. However, as previously noted, supra, Plaintiff's federal cause of action against Logan and Cherokee County alleges violations of his constitutional rights by "correctional officers" (Logan) for alleged excessive force (and with respect to the Defendant County, failure to properly supervise the law enforcement officers at the jail), and does not involve Plaintiff's medical claims against Southern Health Partners (or against the Defendant County by virtue of its contract with Southern Health Partners).



sua sponte assert sovereign immunity on his behalf and deny any motion to amend by Plaintiff on that basis. However, Plaintiff did not file any motion to amend his Complaint to add the Sheriff of Cherokee County as a party Defendant in this case in response to Judge Lewis' Order. Rather, Plaintiff states in his response brief that "[a]lthough the Sheriff could also be a potentially liable party, the County had a non-delegable duty to assure the proper medical treatment of inmates at the Detention Center during the relevant period". Plaintiff's Response Brief, p. 16. Hence, Plaintiff is still proceeding solely against Cherokee County as the party Defendant (and in any event, as has previously been noted, Plaintiff's medical treatment is not even at issue in his federal cause of action).[11]

Therefore, the Defendants Logan and Cherokee County are entitled to dismissal of Plaintiff's Third Cause of Action asserting a federal constitutional claim under 42 U.S.C. § 1983.

**II.**

Plaintiff's remaining three Causes of Action are all state law claims. In his First Cause of Action he asserts a claim for negligence/assault and battery against all of the Defendants, in his Second Cause of Action he asserts a claim for assault and battery against the "County Defendants", and in his Fourth Cause of Action (mislabeled "Third Cause of Action") Plaintiff

---

[11]Plaintiff does make a separate argument in his brief that the Sheriff's Department waived its right to assert sovereign immunity by providing Major Anderson to serve as the County's designated representative in this lawsuit. Plaintiff's Response Brief, p. 18. However, Major Anderson, as the Detention Center Director, is a fact witness in this case. He is not a party, nor does his being a witness make the entity for whom he works (the Cherokee County Sheriff) a party in this lawsuit. Plaintiff's argument that the Defendant Anderson, who is the jail administrator, being a witness in this case somehow results in the Sheriff of Cherokee County or the Sheriff's Department having waived it's sovereign immunity from suit in this Court is patently without merit. Moreover, as is noted above, the issue of whether the Sheriff of Cherokee County is or has waived his sovereign immunity from suit in this case is not even at issue, since he is not a Defendant in this case.



asserts a claim for medical negligence against the Defendants Southern Health Partners, Inc.  In the Report and Recommendation filed September 14, 2017, the undersigned concluded that the Defendants Cherokee County and Logan were both entitled to dismissal as party Defendants from Plaintiff's state law claims, and that since the Defendant Cherokee County was the only named Defendant in Plaintiff's Second Cause of Action, that that cause of action should be dismissed, in toto.  Plaintiff's remaining state law claims against the Defendants Southern Health Partners as set forth in his First and Fourth Causes of Action were to then be remanded back to state court for resolution pursuant to United Mine Workers v. Gibbs, 383 U.S. 715 (1966) and its progeny.

In her remand Order, Judge Lewis directed further briefing on this issue of whether and to what extent the Defendant Southern Health Partners' agreement with Cherokee County to provide health care services to inmates at the Cherokee County Detention Center has any bearing on the Court's consideration of Cherokee County and Logan's requests for dismissal, and whether Cherokee County is liable for any of Southern Health Partners' alleged wrongful acts.[12]

Initially, it is noted that Judge Lewis' questions do not affect the previous recommendation that Plaintiff's Second Cause of Action be dismissed.  Plaintiff's Second Cause of Action solely asserts an assault and battery claim against the Defendant County arising out of the alleged force used against the Plaintiff by correctional officers at the jail.  See Amended Complaint, ¶ ¶ 20-22.  This claim does not involve Southern Health Partners, the County's agreement with Southern Health partners, or Plaintiff's medical care.  As such, Cherokee County is entitled to

---

[12]Judge Lewis' Order initially also asked whether the Sheriff of Cherokee County would or could be liable for any of Southern Health's alleged wrongful acts.  However, as discussed hereinabove, supra, the Sheriff of Cherokee County is not now, and has never been, a party Defendant in this lawsuit, nor has Plaintiff ever sought to amend his pleadings to add the Sheriff as a party Defendant, either previously or in response to Judge Lewis' Order.



dismissal of this cause of action, as it would be the Sheriff of Cherokee County or the Office of the Sheriff that would be potentially liable for any such claim, not Cherokee County. See Report and Recommendation of September 14, 2017, pp. 9-11; see also Cobb, 2014 WL 4220423 at * 2 [discussing Fourth Circuit and South Carolina law holding that since County has no control over operations or policies of the jail, it cannot be held liable for events that take place there]; Cone v. Nettles, 417 S.E.2d 523, 524 (S.C. 1992) [Under South Carolina law, the Sheriff and Sheriff's deputies are State, not County, employees]; Riley v. County of Cook, 682 F.Supp. 2d 856, 860 (N.D.Il. 2010)["Since the County cannot control the actions taken by [the Sheriff's] Office, it cannot be charged with vicarious liability"] (internal citations omitted).

       With respect to the two (2) remaining state law causes of action, in the Report and Recommendation of September 14, 2017, the undersigned concluded that Logan is not a proper party Defendant for Plaintiff's state law claims (which are asserted under the South Carolina Tort Claims Act), and that he was therefore entitled to dismissal as a party Defendant under these state law claims. See Report and Recommendation (Court Docket No. 58), pp. 12-13. Plaintiff correctly notes in his response brief that an individual employee of a governmental entity, otherwise immune from suit under the SCTCA for tortuous acts committed within the scope of his official duties, may nonetheless be held individually liable where the alleged tort at issue involves actual malice or intent to harm. See S.C.Code Ann. § 15-78-70(a) and (b) [An employee of a governmental entity is immune under the SCTCA for tortuous acts committed within the scope of his official duties and not liable except for actual fraud, actual malice, intent to harm, or a crime involving moral



18

turpitude.].[13] The undersigned does not find that Plaintiff's conclusory and speculative claims and testimony establish a genuine issue of fact that the Defendant Logan committed any act or conduct against the Plaintiff with actual malice or an intent to harm him sufficient to subject him to individual liability outside of the SCTCA. However, it is not necessary for this Court to even reach this issue, or to resolve the separate question (raised by Plaintiff in his response to the previous Report and Recommendation) of whether the Defendant Cherokee County's agreement with Southern Health Partners to provide health care services to inmates at the Detention Center would allow Plaintiff to pursue his tort claims against the County relating to the health care he received. Rather, as Plaintiff's sole federal claim is subject to dismissal, this Court should remand Plaintiff's remaining state law claims as set forth in his First and Fourth Causes of Action back to state court for disposition. See Clark v. Brown, 861 F.2d 66, 68 (4th Cir. 1988)[Directing dismissal of state law claims on remand following dismissal of Plaintiff's federal § 1983 claim]; Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988) [Noting that federal courts should generally decline to exercise pendant jurisdiction over remaining state law claims after dismissal of federal claims in a lawsuit].

In Carnegie-Mellon v. Cohill, 44 U.S. 343 (1988), the Supreme Court held that "in the usual case in which all federal - law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine . . . will point toward declining to exercise

---

[13]However, Plaintiff should also be aware that if the employee acts outside the scope of his official duties, the SCTCA provides that "[t]he governmental entity is not liable for such a loss resulting from . . . (17) employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude . . . . " see S.C. Code 15-78-60 (17); see also Tucker v. Shelton, No. 6:16-CV-313-TMC-KFM, 2017 WL 6033521, at *3 (D.S.C. Nov. 20, 2017), report and recommendation adopted, No. 6:16-CV-00313-TMC, 2017 WL 6026508 (D.S.C. Dec. 5, 2017).



jurisdiction over the remaining state law claims". Carnegie-Mellon, 44 U.S. at 350, n. 7.  The "factors" the Court was referring to in Carnegie-Mellon are judicial economy, convenience, fairness, and comity.  Here, comity obviously favors a remand, as a remand of these remaining state law causes of action will allow the more appropriate court to rule on these exclusively state law issues. Gibbs, 383 U.S. at 726 ["Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"].  Additionally, if summary judgment were to be denied on any of these claims, it would be much more appropriate for the state courts to try these state law claims. These are also no issues of judicial economy, convenience or fairness weighing against remand, as discovery has been completed and the summary judgment motions have been briefed and are ready for decision.  As noted, the state court is not only the more appropriate court to now rule on these exclusively state law claims, it is the more appropriate court to then try these claims if summary judgment were to be denied.  Therefore, the Carnegie-Mellon factors support remand in this case.

Moreover, District Courts in the Fourth Circuit have also considered other related factors when weighing remand of state law claims, including: 1) whether the claim involves a straight forward application of well-defined case law; Caughman v. S. C. Dep't of Motor Vehicles, No. 09-503, 2010 WL 348375, at * 2 (D.S.C. Jan. 26, 2010); and 2) whether the complaint was originally filed in federal court; Spears v. Water & Sewage Auth. of Cabarrus Cty., No. 15-859, 2017 WL 2275011, at * 9 (M.D.N.C. May 24, 2017).  Here, the case was not originally filed in federal court - it was removed to this court by the Defendants from the Plaintiff's preferred state court jurisdiction.  Further, to the extent Plaintiff is asserting that the contract between the County and Southern Health Partners makes the County liable in tort for medical care provided to jail inmates by employees of Southern Health Partners (notwithstanding the fact that the jail itself is



20

under the jurisdiction of the Sheriff, not the County), rather than involving a straight forward application of well-defined case law, this would appear to be a question of state law applicability and tort law principles more appropriately decided in the first instance by a state court.

Therefore, if the Court adopts the recommendation herein for dismissal of Plaintiff's sole federal claim, his state law causes of action should be remanded back to state court for disposition.[14]  Gibbs, 383 U.S. at 726 ["Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"]; Mills, 709 F.Supp. at 675-676 [Noting that federal courts should generally decline to exercise pendant jurisdiction over remaining state law claims after dismissal of federal claims in a lawsuit]; Carnegie-Mellon, 484 U.S. at 350, n. 7 ["[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state law claims."].

### Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted** with respect to Plaintiff's Third Cause of Action asserting a federal claim against the Defendants Logan and Cherokee County pursuant to 42 U.S.C. § 1983, and that that claim be **dismissed**.  The Defendant Cherokee County should also be **granted** summary judgment on Plaintiff's Second Cause of Action for the reasons stated.  Plaintiff's remaining claims (First and Fourth Causes of Action) should then be **remanded** back to state court for disposition.  Clark, 861 F.2d at 68 [Directing dismissal of state law claims on remand following dismissal of Plaintiff's

---

[14]Except for Plaintiff's Second Cause of Action, which the undersigned has separately recommended for summary judgment.  See, discussion, supra.



federal § 1983 claim].

The parties are referred to the Notice Page attached hereto.



_____
Bristow Marchant
United States Magistrate Judge

March 22, 2018
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4ᵗʰ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).